# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| LORETTA CLINE §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>MICHAEL J. ASTRUE, §<br>Commissioner of Social Security, §<br>§<br>Defendant. § | NO. 3:06-CV-1628-B |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on September 8, 2006. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On April 18, 2002, plaintiff Nora Lewis protectively filed an application for a period of disability and disability insurance benefits, claiming disability due to low back pain, hand swelling and shoulder pain. (Administrative Record (hereinafter "Tr.") at 139, 176). Plaintiff alleged a disability onset date of May 5, 2000. (Tr. at 140).

The Administrative Law Judge ("ALJ") conducted a hearing on October 20, 2003. (Tr. at 667-705). On November 19, 2003, the ALJ denied Plaintiff's request for benefits, finding that she was not disabled because she could perform her past relevant work as a mortgage loan processor, mortgage clerk or legal secretary. (Tr. at 85-92). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on October 7, 2004, the Appeals Council remanded the matter back to the ALJ for further consideration, ordering that the ALJ hear

testimony from a medical expert as to "the discrepancies between the claimant's well-documented treatment for pain and the relatively benign neurological findings upon physical examination . . ." (Tr. at 117-120). The ALJ held a second hearing on January 10, 2005 at which he heard testimony from Dr. D. D. Raulston, a medical expert, and Shelly Eike, a vocational expert. (Tr. at 706-739). On January 28, 2005, the ALJ denied Plaintiff's request for benefits, finding that she was not disabled because she could perform a significant number of jobs in the national economy. (Tr. at 26-45). Plaintiff timely requested review of the ALJ's second decision by the Appeals Council and on March 16, 2006, the Appeals Council denied her request. (Tr. at 5-9). Therefore, the ALJ's January 28, 2005 decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed her federal complaint on September 5, 2006. Defendant filed an answer on November 7, 2006. On March 9, 2007, Plaintiff filed her brief, followed by Defendant's brief on May 1, 2007 and Plaintiff's reply brief on June 22, 2007.

<u>Standard of Review - Social Security Claims</u>: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether

substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F. 2d 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 461(5th Cir. 2005).

Discussion: To prevail on a claim for disability insurance benefits, a claimant bears the burden of establishing that he or she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §404.1520. Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence. *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, the ALJ proceeded to step five, finding that there are jobs that exist in significant numbers in the national economy that the claimant can perform, relying on the testimony of a vocational expert and a medical expert. (Tr. at 39-44). He, therefore, denied Plaintiff's request for benefits. (Tr. at 44).

The ALJ found that Plaintiff suffered from a number of severe impairments, including atypical fibromyalgia and degenerative disc disease, but concluded that those impairments and the pain resulting from them did not preclude Plaintiff from performing all work activities. (Tr. at 43). Plaintiff argues that the ALJ should have accepted Plaintiff's subjective complaints of pain and should have found that Plaintiff's pain precluded her from performing any work activities.

Pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). "Under the Act, pain alone can be a disabling condition, even if its existence is unsupported by objective evidence, provided the claimant establishes a medically determinable impairment capable of producing disabling pain." *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995) (citing *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir.1985)). Once the claimant establishes such a medical impairment, the ALJ will determine the claimant's work capacity by considering claimant's subjective complaints of pain along with the medical evidence. *Id*. "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted). The determination of whether a claimant is able to work despite some pain "is within the province of the administrative agency and should be upheld if supported by substantial evidence." *Id*.

4

The ALJ evaluated Plaintiff's testimony regarding her pain in light of all the objective medical evidence and concluded that the evidence did not support Plaintiff's testimony concerning her impairments and their impact on her ability to work. The ALJ found that Plaintiff testified that her activities were considerably more limited or restricted than established by the medical evidence. (Tr. at 38). The ALJ found that "neither the objective medical evidence nor any other non-medical evidence establishes that the claimant's ability to function is so severely impaired as to preclude the performance of all work activities."

In the ALJ's lengthy decision, he thoroughly reviewed and summarized all of the medical evidence, Plaintiff's daily activities, as well as the other factors contained in SSR 96-7p for assessing the credibility of a claimant's subjective complaints of pain. SSR 96-7p; *see also* 20 C.F.R. § 404.1529 (listing same factors). The substantial medical evidence supports a finding of no disability. Although the medical records document Plaintiff's complaints of pain, they do not support a finding of pain that is disabling, i.e. constant, unremitting and wholly unresponsive to therapeutic treatment. In fact, while Plaintiff underwent a number of surgical procedures and medical treatments to alleviate her pain, the medical records show that many of those provided Plaintiff with substantial pain relief. For example, Plaintiff's physical therapy records for the period of April 30 through September 12, 2001, show that for the majority of that time period, Plaintiff rated her pain at a 3 or less on a scale of 1 to 10. (Tr. at 262-306). She also experienced improvement from medial branch blocks in August and September 2001. (Tr. at 501). In July 2003, Plaintiff underwent a trial of a spinal cord stimulator and noted almost 100% relief when the stimulator was turned on. (Tr. at 638). In September 2003, Dr. Scott Berlin implanted a spinal cord nerve stimulator, which substantially relieved Plaintiff's pain. (Tr. at 627). In

5

December 2003, according to follow up notes from Dr. Berlin's office, Plaintiff reported that the stimulator provided "adequate coverage of her pain" and that she was "satisfied with the current coverage to her lower back and bilateral lower extremities." (Tr. at 634). Plaintiff rated her pain at a 4 out of 10 and stated that she "remains quite active" but "sometimes does too much." Plaintiff testified at the first hearing before the ALJ that she was not experiencing pain when the stimulator was turned on. (Tr. at 680).

    Plaintiff was also treated with various medications, which she stated provided relief of her pain without side effects. For example, in August 2002, Dr. Berlin put Plaintiff on a Duragesic patch, which provided her with good pain relief. (Tr. at 512-513). In October 2002, Plaintiff told her rheumatologist that the patch caused "significant improvement" and felt that "the medications [had] been helpful" in relieving her pain. (Tr. at 501). In a November 21, 2002 progress note, Dr. Berlin notes that after increasing Plaintiff's medication, Plaintiff had "been doing better on her current medical regimen. . . Overall Patient states that she is doing better and is participating in more activities at home including [h]ouse work and doing exercises." Despite her improved pain, Plaintiff told Dr. Berlin in that appointment that she was planning to file for disability to which Dr. Berlin responded that he did not do disability ratings. (Tr. at 509). Notes of a December 18, 2002 examination by her rheumatologist report that Plaintiff complained of pain that ranged in severity between "tolerable to very mild." (Tr. at 519). In June 2005, Dr. Berlin noted that Plaintiff's pain was "well controlled with the use of [medications]" and that she was "getting good control with the use of her spinal cord stimulator." (Tr. at 664). Finally, throughout the relevant period, Plaintiff's treating physicians encouraged her to participate in exercise programs, which is inconsistent with a conclusion of disabling pain.

*See* Tr. at 501, 519, 628, 634, 648.

Fibromyalgia is a recognized medical condition which generally does not manifest itself in objective, observable testing. In the present case it is undisputed that the ALJ found that atypical fibromyalgia was one of the impairments from which Plaintiff suffered. Physical pain, though frequently undifferentiated, is the primary consequence of the condition.

The ALJ recognized that Plaintiff experienced a level of pain, but that Plaintiff's testimony regarding her subjective complaints of pain exceeded the descriptions of pain which she had as reported in the medical record. (Tr. at 38). As noted above, he determined the weight to be given to her testimony in accordance with SSR 96-7p and found that the evidence in its entirety did not support a conclusion that she was disabled. (Tr. at 43 at ¶¶ 3-5). The ALJ evaluated Plaintiff's testimony in light of all the objective medical evidence, including the testimony of the medical expert, and concluded that the evidence did not support her pain allegations to the extent alleged. "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Plaintiff also attacks the ALJ's finding that she could engage in the occupations identified by the vocational expert. She focuses on the fact that Dr. Raulston, the testifying medical expert, opined that pain could affect a person's ability to concentrate and focus on a task. (Tr. at 722). However, he also opined that Plaintiff's impairments did not meet or equal a listing. Ms. Cline also suggests that the ALJ failed to consider any side effects of her medications on her ability to perform the jobs described by the vocational expert. However, as noted in the hearing and the ALJ's decision, "[t]here are no adverse side-effects to the medications reported in the medical records . . ." (Tr. at 725, 35). Given that a determination

with respect to the amount of pain and its duration involves a credibility issue reserved to the ALJ and the absence of any medical records demonstrating deleterious side-effects on Plaintiff's ability to perform the jobs identified by the vocational expert, there is substantial evidence to support his decision that she was not disabled as that term is defined under the Act.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 15th day of November, 2007.

*Wm. F. Sanderson Jr.*
───────────────────────
Wm. F. Sanderson Jr.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.